IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

      Plaintiff,

  vs.                                                                    Criminal Action No. 5:11-cr-6

BRIAN C. JENKINS,

      Defendant.

## REPORT AND RECOMMENDATION DEFENDANT'S MOTION TO SUPPRESS BE GRANTED IN PART AND DENIED IN PART

This matter comes before the Court on Defendant's Motion to Suppress Evidence filed May 12, 2011 and Motion to Suppress Evidence Seized Under Search Warrant filed June 24, 2011.[1] The Court held an evidentiary hearing and argument on Defendant's first Motion to Suppress on June 17, 2011. The United States of America (hereinafter "USA") appeared by David J. Perri, Esq., in person. Defendant appeared in person and by his counsel Brendan S. Leary, Esq., in person. The USA tendered Plaintiff's Exhibit 1, as well as, the testimony of witnesses Donald Larsen, Timothy Cecil and Donald Harris. Defendant tendered two (2) exhibits, as well as, the testimony of Holly Christine Jenkins and Brian Jenkins. No other testimony was taken nor was any other evidence adduced. A subsequent evidentiary hearing was also held on June 21, 2011 where the same parties appeared and the Government offered the testimony of Mr. Anthony Ray Thomas. No other testimony was taken nor was any other evidence adduced at this hearing.

---

[1] Dkt. Nos. 17 & 29, respectively.

# I. Introduction

A.  Background

Defendant, Brian C. Jenkins, is the only Defendant named in a five-count indictment charging him with three counts of production of child pornography in violation of 18 U.S.C. §§ 2251(a), 2251(e); and two counts of aiding and abetting tampering with a witness in violation of 18 U.S.C. § 1512(b)(2) and 18 U.S.C. §2. Defendant moves this Court to suppress evidence "obtained in violation of Defendant's constitutional rights under the Fourth Amendment." See Def.'s Mot., Pg. 1 (Dkt. 17).

B.  The Motions

    1.  Motion to Suppress.[2]

    2.  Motion to Evidence Seized Under Search Warrant.[3]

C.  Recommendation

I recommend Defendant's Motion to Suppress be **GRANTED IN PART** and **DENIED IN PART**.

Defendant's Motion to Suppress should be **GRANTED IN PART** as to the memory card seized from Defendant's pocket. It was unreasonable for the patrolmen to believe a search of the memory card would produce evidence related to the crime for which Defendant was arrested.

Defendant's Motion to Suppress should be **DENIED IN PART** as to the digital camera, the memory card contained therein and the statements allegedly made by Defendant to hinder his

---

[2] Dkt. No. 17.

[3] Dkt. No. 29.

prosecution.  Defendant effectively abandoned the digital camera and its memory card and, therefore, forfeited any reasonable expectation of privacy Defendant may have held in those items.

Defendant's Motion to Suppress Evidence Seized Under Search Warrant should be **DENIED** as moot because the issues raised in Defendant's First Motion to Suppress sufficiently resolve the issues raised in Defendant's Motion to Suppress Evidence Seized Under Search Warrant.

## II. Facts

A.  Expectation of Privacy

Defendant's sister, Holly Christine Jenkins, testified Defendant owned a purple and pink camera in June, 2010.  Defendant testified he had traded a camera Ms. Paula Miller wanted to Ms. Miller in exchange for a purple/pink camera Defendant picked out at Wal-Mart.  Defendant established a *prima facie* case of an expectation of privacy in the purple/pink colored camera sufficient to require the Government to proceed with its burden of establishing whether the search of the purple/pink camera was reasonable.

B.  Seizure of the Camera with the Memory Stick & the Second Memory Stick

Between 1:00 am and 2:00 am on June 7, 2010, Patrolman Larsen of the New Martinsville, West Virginia Police Department, observed a "four-wheeler," driven with a blonde passenger.  While the "four-wheeler" was lawfully on an unlined street, it had no headlights or taillights and appeared to be a "four-wheeler" which was not manufactured to carry a passenger.

Upon observing this, Patrolman Larsen turned on his flashing lights and siren and chased the "four-wheeler," which promptly sped away.  Shortly thereafter, Patrolman Larsen found the

"four-wheeler" stopped in a yard with no lights. Patrolman Larsen approached on foot with a flashlight and began to search the area. First, he saw a blonde female lying face down in a wooded area. Patrolman Larsen ordered the blonde female to crawl out. She complied and Patrolman Larsen ascertained the blonde female was 13 years-old. Patrolman Larsen continued his search of the area and saw a man lying face down in the wooded area. Patrolman Larsen ordered the man to crawl forward and the man complied. The man was handcuffed and identified as the Defendant in this action. At this time, NMPD Police Chief Cecil arrived at the scene and took custody of Defendant.

Patrolman Larsen also searched the area for contraband and found a camera in the path Defendant crawled out from the woods. Patrolman Larsen picked up the camera and Defendant said, not in response to any question, that it was not Defendant's camera according to both Patrolman Larsen and Police Chief Cecil. Defendant, alternatively, testified that Patrolman Larsen took the camera from Defendant's right front break pocket of the "camo" jacket Defendant was wearing that night. Defendant further testified that the pocket was zipped. The location of the camera was the only material dispute in the testimony for all witnesses. All items in Defendant's possession were placed in an envelope. One of the items was a memory card or stick taken from Defendant's pocket.

Defendant was then taken to the police station. Patrolman Larsen looked at the pictures contained in the memory stick in the camera and discovered that it held pictures of a naked female juvenile engaged in sexual acts. Patrolman Larsen believed these photographs likely constituted a felony and called Detective Harris, who is in charge of all felony investigations. Patrolman Larsen did not look at the pictures contained in the memory stick found in

4

Defendant's pocket.

Patrolman Larsen filed a complaint in the Magistrate Court of Wetzel County, West Virginia, charging Defendant from fleeing a D.U.I., which is a felony under West Virginia law. Subsequently, on September 16, 2010, the Tyler County, West Virginia, Sheriff's Office obtained a search warrant for the camera, the memory stick in the camera and the second memory stick found in Defendant's pocket. Prior to the issuance of this search warrant, Patrolman Anthony Ray Thomas testified that both he and Patrolman Larsen looked at the memory card found in Defendant's pocket. Additionally, Patrolman Thomas testified that both he and Patrolman Larsen looked at the memory card in the camera approximately 1-2 weeks after Defendant's arrest. One to two weeks after Defendant's arrest was June 14th or June 21st, respectively. Therefore, the memory stick contained in Defendant's pocket was searched approximately 2 months prior to the issuance of the search warrant.

### III. **Motion to Suppress**

A.  Contentions of the Parties

In support of his Motion to Suppress, Defendant argues "[w]hen the officers searched the digital camera, they did not have consent or a search warrant." See Def.'s Mot., Pg. 2 (Dkt. 17). Defendant asserts that "there were no other legally acceptable exceptions to the search warrant requirement present...[and] [t]hus, the search violated Defendant's rights under the Fourth Amendment and the evidence seized from the digital camera must be suppressed." Id. Defendant contends "the police had already recovered the item for which they were investigating, the stolen Honda 4-wheeler; they had already solved their crime, and seizing the digital camera and searching it would have yielded no further information to arrest and likely convict Defendant of stealing the

4-wheeler." Id. at 6. Defendant states that the digital camera "posed no danger to officer safety, nor did [it] have any connection whatsoever with the offense for which Defendant was arrested, to wit, theft of an ATV and a traffic violation." Id. Defendant lastly contends that Defendant's statements where he "allegedly urged witnesses not to cooperate with law enforcement" "flowed directly from the illegal search of the digital camera" and, therefore, are also "subject to suppression as the fruits of the earlier illegal search." Id. at 7.

In opposition, the Government contends Defendant's Motion to Suppress should be denied because '[i]f there is no privacy interest to protect, there is no Fourth Amendment violation when a search occurs." See Pl.'s Resp., Pg. 3 (Dkt. 20). Specifically, the Government contends "[D]efendant told Officers that the camera wasn't his" and that Defendant "further explained that it belonged to a friend...." Id. at 4. This, the Government argues, constitutes an abandonment "of any property interest [Defendant] may have had in that camera" and, therefore, Defendant "cannot complain of its search." Id. Regarding the second memory card, the Government asserts that "[e]ven if this card had not been located at the time of the [D]efendant's arrest, it would have been discovered a short time later during the booking process." Id. at 4. Alternatively, the Government argues that "the Officers may have reasonably assumed that [the memory card seized from Defendant's pocket] was associated with the camera, which did not belong to the [D]efendant." Id.

B. Discussion

The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. CONST. amend. IV. A warrantless search, and the evidence obtained therefrom, may only be valid if the search falls within one of the narrow and well-delineated exceptions to the Fourth Amendment's warrant requirement. United States v. Stevenson, 396 F.3d 538 (4th

Cir. 2005); United States v. Matthews, 591 F.3d 230 (4th Cir. 2009). "[B]ecause the ultimate touchstone of the Fourth Amendment is 'reasonableness,' [however,] the warrant requirement is subject to certain exceptions." Brigham City v. Stuart, 547 U.S. 398, 403 (2006). A specific exception to the warrant requirement of the Fourth Amendment permits officers to perform a warrantless search incident to a lawful arrest. United States v. Currence, 446 F.3d 554, 556 (4th Cir. 2006); United States v. Nelson, 102 F.3d 1344 (4th Cir. 1996). A search incident to arrest requires no more justification than that a lawful custodial arrest was made. United States v. Robinson, 414 U.S. 218 (1973). The Supreme Court, however, set limits upon the permissible scope of a lawful search incident to arrest and held, pursuant to this exception, the officers may search "the arrestee's person and the area 'within his immediate control'." Chimel v. California, 395 U.S. 752, 763 (1969). Whether a particular item may be searched incident to an arrest does not depend on its character. United States v. Ross, 456 U.S. 798, 825 (1982). Nevertheless, an exploratory search based on a hunch is impermissible. Doe v. Broderick, 225 F.3d 440 (4th Cir. 2000).

In terms of abandonment of property, a defendant forfeits any reasonable expectation of privacy therein by voluntarily abandoning property to prevent its detection. Abel v. United States, 362 U.S. 217, 241 (1960); United States v. Leshuk, 65 F.3d 1105 (4th Cir. 1995). When a person voluntarily abandons his privacy interest in property, his subjective expectation of privacy becomes unreasonable, and he is precluded from seeking to suppress evidence seized therefrom. United States v. Stevenson, 396 F.3d 538 (4th Cir. 2005). Denial of ownership in response to an item found near a defendant in response to an officer's questioning, can reasonably lead the officer to believe the item is abandoned. United States v. Alvarez, 2011 WL

7

974724, *1 (4th Cir. 2011).

Defendant contends the Officers' actions in viewing the photographs contained on the memory card within the digital camera violated Defendant's constitutional rights. This Court disagrees. Defendant, at the evidentiary hearing, established a *prima facie* case that the camera belonged to him and that he had an expectation of privacy in it. At the time of his arrest, however, Defendant disclaimed any ownership. Patrolman Larsen testified that he asked Defendant on scene if the camera belonged to the Defendant. Both Patrolmen Larsen and Thomas testified Defendant stated the camera was not his and that, in fact, it belonged to Defendant's friend. The Court finds that Defendant forfeited any reasonable expectation of privacy to the digital camera, as well as, the memory card contained therein when Defendant stated the camera was not his. The patrolmen's actions as to the digital camera and its memory card were reasonable under the Fourth Amendment. See Brigham City v. Stuart, 547 U.S. 398, 403 (2006) (quoting Scott v. United States, 436 U.S. 128, 138 (1978)) ("An action is 'reasonable' under the Fourth Amendment...'as long as the circumstances, viewed objectively, justify [the] action.'").

Defendant also argues the memory card seized from Defendant's pocket also stands contrary to his Fourth Amendment rights. In support, Defendant cites to United States v. McGhee, 8:09-cr-31, 2009 U.S. Dist. LEXIS 129576 (D. Neb. June 19, 2009). In McGhee, the Nebraska court held it was unreasonable for an officer to believe an arrestee's cell phone would have information relating to the crime for which the arrestee was arrested. The court reasoned that because the defendant was arrested pursuant to an arrest warrant based on a conspiracy to distribute drugs occurring during March 2008 and the arrest, itself, took place in January 2009

that "it was not reasonable for the officers to believe a search of the defendant's cell phone would produce evidence related to the crime for which the defendant was arrested. Id. at *6. The court further reasoned that although the defendant "had the cell phone within his immediate control, the cell phone did not present a risk of harm to the officers" and "no evidence suggests the cell phone appeared to be or to conceal contraband or other destructible evidence." Id. The court ultimately found "the officers were not justified in conducting a warrantless search of the [defendant's] cell phone as incident to his arrest." Id.

Here, the Government asserts that "[i]t does not appear that the [D]efendant made any statements at all regarding this second memory card, but the Officers may have reasonably assumed that it was associated with the camera...." See Pl.'s Resp., Pg. 4 (Dkt. 20). The Court finds this argument is unpersuasive. Unlike the memory card found in the abandoned digital camera, this memory card was found in Defendant's pocket. It was unreasonable for the Officers to assume the memory card seized from Defendant's pocket was abandoned and, therefore, able to be searched despite the absence of a warrant. Defendant did have a reasonable expectation of privacy in the memory card seized from his pocket. The Court notes that the McGhee case is not controlling, yet the Court finds it helpful in determining the admissibility of the memory card seized from Defendant's pocket. The patrolmen were investigating Defendant for theft of a "four-wheeler" and, later, developed reasonable suspicion that Defendant might have operated that vehicle while intoxicated. Under these circumstances, the Court finds it was not reasonable for the patrolmen to believe a search of the memory card seized from Defendant's pocket would produce evidence related to the theft of the "four-wheeler." Additionally, the memory card did not present a risk of harm to the officers nor was there a risk that Defendant might destroy any

9

evidence contained on the memory stick in Defendant's pocket.  Accordingly, the patrolmen should have obtained a search warrant prior to viewing the photographs contained on the memory card seized from Defendant's pocket.

The alleged statements Defendant made to hinder his prosecution, as Defendant states, "flow from the illegal search of the digital camera."  Therefore, because the Court found the search of the camera and the memory card within was reasonable, the statements are not found to be subject to suppression.

C.  Recommendation

I recommend Defendant's Motion to Suppress be **GRANTED IN PART** and **DENIED IN PART**.

Defendant's Motion to Suppress should be **GRANTED  IN PART** as to the memory card seized from Defendant's pocket.  It was unreasonable for the patrolmen to believe a search of the memory card would produce evidence related to the crime for which Defendant was arrested.

Defendant's Motion to Suppress should be **DENIED IN PART** as to the digital camera, the memory card contained therein and the statements allegedly made by Defendant to hinder his prosecution.  Defendant effectively abandoned the digital camera and its memory card and, therefore, forfeited any reasonable expectation of privacy Defendant may have held in those items.

Defendant's Motion to Suppress Evidence Seized Under Search Warrant should be **DENIED** as moot because the issues raised in Defendant's First Motion to Suppress sufficiently resolve the issues raised in Defendant's Motion to Suppress Evidence Seized Under Search

Warrant.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen (14) days of the date of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

DATED: June 28, 2011                     /s/ *James E. Seibert*
                                          JAMES E. SEIBERT
                                          UNITED STATES MAGISTRATE JUDGE